

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed October 8, 2007**                                        **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE HERITAGE | § | CASE NO. 04-35574-BJH-11 |
| ORGANIZATION, L.L.C. | § | |
| | § | |
| Debtor. | § | |
| _____ | § | _____ |
| MERALEX, L.P. and HOWARD | § | |
| M. JENKINS, | § | |
| | § | |
| Plaintiffs, | § | |
| - against - | § | |
| | § | |
| THE HERITAGE ORGANIZATION, | § | |
| L.L.C., GMK FAMILY HOLDINGS, | § | |
| L.L.C., GARY M. KORNMAN, EDWARD | § | |
| D. AHRENS, and AHRENS & | § | ADVERSARY NO. 05-3699-BJH |
| DeANGELI P.L.L.C., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| _____ | § | _____ |
| GMK FAMILY HOLDINGS, L.L.C., | § | |
| GARY M. KORNMAN, and THE | § | |

| | |
|---|---|
| **HERITAGE ORGANIZATION, L.L.C.,** | § |
| **Third Party Plaintiffs,** | § |
| | § |
| - against - | § |
| | § |
| **W. RALPH CANADA, JR.,** | § |
| | § |
| **Third Party Defendant.** | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Partial Summary Judgment (the "Motion") filed by third party defendant W. Ralph Canada ("Canada"). GMK Family Holdings, L.L.C. ("GMK") and Gary M. Kornman ("Kornman") (collectively, the "Kornman Parties") oppose the Motion. The Court has core jurisdiction over the Motion in accordance with 28 U.S.C. §§ 1334 and 157(b). This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### I. Factual and Procedural Background

To put the Motion into context, some background facts regarding (i) Canada's relationship with The Heritage Organization L.L.C. ("Heritage"), (ii) the prior arbitration involving Heritage, Kornman, and Canada, (iii) Heritage's client relationship with Plaintiffs Howard M. Jenkins ("Jenkins") and Meralex, L.P. ("Meralex"), (iv) plaintiffs' lawsuit against Heritage, Kornman, and Canada, among others, and (v) the Kornman Parties' claims against Canada in the third-party action,[1] will be helpful.

---

[1] Jenkins and Meralex originally named Canada as a defendant in their lawsuit against Heritage and its affiliates. As noted elsewhere in this Memorandum Opinion and Order, Canada was later dismissed as a primary defendant. However, shortly thereafter, the Kornman Parties filed what they denominated as a "cross-claim" against

**Memorandum Opinion and Order** **Page 2**

Heritage is a Delaware limited liability company that was formed in 1994. Heritage filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 17, 2004, which was assigned Case No. 04-35574 (the "Case"). Prior to Heritage's bankruptcy filing, Heritage provided various estate and tax planning strategies to extremely high net-worth individuals for a fee, including Jenkins.

Canada, a lawyer, was the former President and Chief Operating Officer of Heritage and was one of the "Principals" responsible for making the final sales pitch to prospective clients to try to "sell" the Heritage estate and tax savings strategies. As relevant here, Canada was involved in Heritage's client relationship with Jenkins.

Canada went to work for Heritage in 1995 pursuant to the terms of an employment agreement (the "Employment Agreement"). He never held an equity interest in Heritage or in any entity that was a member of Heritage. At some point in 2001, a dispute arose between Canada and Kornman over Canada's level of compensation, which resulted in the non-renewal of Canada's Employment Agreement and Canada's filing of an arbitration demand against Heritage and Kornman. Canada claimed, among other things, that Heritage had failed to honor an oral promise to pay Canada fifteen percent of the fees generated by what the parties all refer to in the Case as the "Connecticut Client." *See generally* Docket. No. 186 in Adv. Pro. No. 04-3338-BJH (the "Canada Adversary"). In 2004, the arbitrators issued an award in Canada's favor for approximately $6.1 million. Canada then applied in state court for an order confirming the arbitration award, and on the same date such an order was entered, Heritage filed a motion to vacate a portion of the award. Canada then moved for

---

Canada. Because Canada had been dismissed from the suit, that pleading was technically a third-party complaint at the time it was filed, and not a cross-claim. The parties' pleadings initially refer to the Kornman Parties' pleading against Canada as a "cross-claim," although more recent pleadings refer to it as a third-party complaint.

**Memorandum Opinion and Order** **Page 3**

entry of judgment based on the order confirming the award, but the day before the hearing, Heritage filed its bankruptcy petition.

During the Case, the action pending in state court was removed to this Court, and GMK objected to Canada's proof of claim (which was filed in the amount of the arbitration award). This Court, through former Chief Judge Felsenthal, issued a Memorandum Opinion which confirmed the arbitration award in part and vacated it in part and left several issues remaining for trial. *In re The Heritage Organization, L.L.C.*, 322 B.R. 285 (Bankr. N.D. Tex. 2005). After six days of trial, this Court[2] issued a Memorandum Opinion on January 5, 2006 and a Judgment on January 19, 2006, which allowed Canada's claim as an unsecured, non-priority claim in the amount of $5,050,152.12 subject to a further request for attorneys' fees. *See* Docket Nos. 186 and 189 in the Canada Adversary.

Heritage and the Kornman Parties appealed, and Canada filed a cross-appeal. On September 14, 2006, the District Court entered a Memorandum Opinion reinstating and affirming the arbitration award in its entirety, *see* Docket No. 225 in the Canada Adversary, and allowing Canada an unsecured, non-priority claim against Heritage in the amount of $6,218,679.40 (comprised of the original arbitration award plus $57,409.32 of prejudgment interest). The Kornman Parties and the debtor (out of possession) appealed the District Court's decision to the Fifth Circuit, where it remains pending.

Regarding Heritage's client relationship with Jenkins (and one of his entities, Meralex), Heritage presented a capital gains tax savings strategy (the "752 Strategy") to Jenkins in December

---

[2] Former Chief Judge Felsenthal left the bench in 2005; the Case and the Canada Adversary were re-assigned to the undersigned on July 28, 2005.

1998. After several presentations from Heritage, Jenkins and Meralex decided to implement the 752 Strategy in early May 1999. As a result of the implementation of the 752 Strategy, Jenkins/Meralex owed Heritage fees totaling $15,096,930. On May 12, 1999, Meralex paid the Heritage fee in full.

Jenkins alleges that he implemented the 752 Strategy after receiving a promise that he would be provided with a formal legal opinion supporting its use. Plaintiffs' Second Amended Complaint, Docket No. 117 in Civil Action No. 3:03-CV-0991-B (N.D. Tex.) ("Second Amended Complaint") at ¶ 11. In the late summer/fall of 2000, Jenkins alleges that he obtained, for the first time, a copy of an opinion letter from Ahrens & DeAngeli, P.L.L.C. ("A&D") regarding the validity of the 752 Strategy, which had been sent to Heritage. Upon receipt of the opinion letter, Jenkins alleges that he "concluded that the A&D Opinion Letter could not be used to support the [752 Strategy]." Second Amended Complaint, at ¶ 51. In essence, Jenkins alleges that the purported factual bases set forth in the A&D Opinion Letter allegedly supporting Jenkins's use of the 752 Strategy were fabrications. According to Jenkins, Meralex and he were faced with the "undesirable options of either filing the Meralex tax return prepared by A&D (that inaccurately reflected the substance of the transactions that comprised the [752 Strategy]) or filing a Meralex tax return, contrary to A&D's advice, that conflicted with [another related-entity's] return." *Id*. at ¶ 52. According to Jenkins, he decided to contact the Internal Revenue Service "to resolve the quandary." *Id*. And, according to Jenkins, thereafter various of the Jenkins-related entities, including Meralex, entered into a "closing agreement with the Internal Revenue Service whereby several of the transactions that comprise the [752 Strategy] were rescinded and Meralex paid the required capital gains tax on the August 1999 sale of Publix stock." *Id*.

On or about May 19, 2003, Meralex and Jenkins filed suit against Heritage, GMK, Kornman,

Canada, A&D, and Ahrens in federal district court in the Northern District of Texas – *i.e.*, Civil Action No. 3:03-CV-0991-B. By Memorandum Order signed January 4, 2005, the District Court granted, in part, motions to dismiss by the Heritage defendants (Heritage, Kornman, and GMK), A&D and Ahrens, thereby dismissing many of the plaintiffs' claims. In addition, by Memorandum Order entered on February 17, 2005, the District Court dismissed with prejudice plaintiffs' RICO claims, which were the sole source of the District Court's original jurisdiction. The District Court held in abeyance its decision on whether to retain jurisdiction over the remaining state law claims pending a conference with the parties to discuss the effect, if any, of the pending Heritage bankruptcy on the state law claims. On May 27, 2005, the District Court entered an order referring the suit to this Court, for consideration in conjunction with the Case. It was subsequently assigned Adversary Proceeding Number 05-3699-BJH (the "Jenkins/Meralex Adversary").

In light of the District Court's dismissal orders, the only "live claims" in the Jenkins/Meralex Adversary are their claims for fraud/fraudulent inducement[3] and breach of fiduciary duty against Heritage, GMK, Kornman, A&D, and Ahrens. In vastly oversimplified terms, Meralex and Jenkins allege that they were fraudulently induced into implementing the 752 Strategy by the defendants' misrepresentations regarding the validity and legality of the 752 Strategy. Moreover, Meralex and Jenkins allege that the defendants failed to disclose the extent of the financial and other relationships between and among A&D, Ahrens, Heritage, and Kornman, and that the advice that Meralex and Jenkins received from A&D and Ahrens was not truly independent advice due to A&D's and Ahrens' undisclosed financial interest in the fee Meralex would pay to Heritage for implementing

---

[3] The factual allegations have evolved beyond those contained in the Second Amended Complaint as discovery has proceeded. Technically, the Second Amended Complaint contains a claim for common law fraud, and it appears to allege that Jenkins and Meralex were fraudulently induced into implementing the 752 Strategy.

**Memorandum Opinion and Order** **Page 6**

the 752 Strategy. According to Meralex and Jenkins, they were defrauded into implementing the 752 Strategy, and have suffered damages in reliance upon the defendants' misrepresentations and material omissions. Meralex and Jenkins also allege that the defendants breached fiduciary and confidential relationships by preparing, and causing them to enter into, the client agreement (i) without disclosing the alleged conflicts of interest, (ii) which contained terms less favorable than Jenkins and Meralex could have negotiated in an arm's-length transaction, and (iii) which unduly restricted the ability of Jenkins and Meralex to seek independent professional advice.

Meralex and Jenkins dismissed all claims against Canada on October 15, 2003. The dismissal was without prejudice, and Canada agreed that the statute of limitations applicable to the plaintiffs' claims against him would be tolled until the entry of a final, non-appealable judgment. *See* Docket No. 59 in 3:03-CV-0991-B. Shortly thereafter, GMK and Kornman filed a Third-Party Complaint against Canada, alleging that to the extent they "may ever be found to be liable for any of plaintiffs' claims and such liability is based in whole or in part on any act or omission of Canada, then Canada is contractually bound to indemnify the Heritage Defendants as set forth in Canada's Employment Agreement with Heritage." *See* Heritage Defs.' Cross-Claim Against W. Ralph Canada, Jr., (Docket No. 61 in Case No. 3:03-CV-0991-D), p. 3, ¶ 10.[4]

## II. Contentions of the Parties

On August 7, 2007, Canada filed the Motion, seeking a summary judgment on the indemnity claim asserted against him in the Third-Party Complaint. Specifically, Canada alleges that he is

---

[4] At the hearing on the Motion, the Kornman Parties clarified that their indemnity claim against Canada relates only to the fraud/fraudulent inducement claim asserted against them by Jenkins and Meralex (and not the breach of fiduciary duty claims). Moreover, the Kornman Parties clarified that they were only seeking indemnity for Canada's acts, not acts of Kornman or other Heritage representatives who may have been involved in the Jenkins/Meralex engagement.

entitled to summary judgment because the Kornman Parties' indemnity claim is (i) covered by the arbitration clause contained in the Employment Agreement and this action is foreclosed by the prior arbitration award;[5] and/or (ii) barred as a matter of law because it is legally impermissible for the Kornman Parties to be indemnified for acts that Kornman "not only authorized, but directed," relying by analogy on the Texas "express negligence doctrine" and/or the Texas "doctrine of acquiescence." *See* Br. in Supp. of Mot. For Partial Summ. J. (Docket No. 75), at pp. 13-16.

In contrast, the Kornman Parties dispute both the preclusive effect of the prior arbitration award on their indemnity claim and the applicability of either the express negligence doctrine or the doctrine of acquiescence. In addition, the Kornman Parties argue that it is premature for the Court to consider the Motion, as Jenkins' deposition is not yet concluded, and they are unable to respond to Canada's factual assertion that Kornman "not only authorized, but directed" all of Canada's acts in connection with the Jenkins/Meralex engagement. In other words, according to the Kornman Parties, until Jenkins identifies the specific acts or statements allegedly made by Canada that Jenkins claims were false and/or materially misleading, it is impossible to respond to Canada's factual assertion that Kornman knew about all of Canada's actions and/or statements and either directed them, authorized them, or acquiesced in them.

### III. Legal Analysis

#### A. Standard of Review

In deciding a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

---

[5]At the hearing on the Motion, Canada withdrew this ground for the entry of a summary judgment in his favor.

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether a fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Berquist v. Washington Mut. Bank*, No. 05-20956, 2007 WL 2460350 (5th Cir. Aug. 31, 2007). A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pylant v. Hartford Life and Acc. Ins. Co.,* No. 06-11370, 2007 WL 2353165 (5th Cir. Aug. 20, 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party makes an initial showing that there is no evidence to support the non-moving party's case, the non-moving party must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

      B.      **Is the Motion Premature?**

As noted previously, according to the Kornman Parties, until Jenkins identifies the specific acts or statements allegedly made by Canada that Jenkins claims were false and/or materially misleading, it is impossible to respond to Canada's factual assertion that Kornman knew about all of Canada's actions and/or statements and either directed them, authorized them, or acquiesced in them. Similarly, according to the Kornman Parties, until Jenkins identifies the specific statements allegedly made by Canada that Jenkins claims were false and/or materially misleading, it is impossible to respond to Canada's factual assertion that such statements were consistent with Kornman's own statements to Jenkins and/or Meralex.

Canada disputes that the Motion is premature. Canada argues that the Kornman Parties failed to controvert Canada's declaration in support of the Motion, which unequivocally states that

> all of the statements that I made to Jenkins or Meralex, as well as all actions I took, concerning the Tax Strategy were (1) done specifically at the direction of Kornman; (2) were known to Kornman and acquiesced in by him; and (3) were completely consistent with statements that I know that Kornman made to Jenkins and/or Meralex concerning the Tax Strategy.

Declaration of W. Ralph Canada, Jr. (Docket No. 75, Ex. B), at p. 3, ¶ 8. Therefore, Canada argues that since the facts in his declaration are uncontroverted, the Court must proceed to decide the merits of the Motion based upon those uncontroverted facts.

Although the Kornman Parties' failure to submit any affidavits or other summary judgment evidence in opposition to the Motion has complicated the analysis, the Court concludes that it is appropriate to continue the hearing on the Motion until after the deposition of Jenkins is concluded. While the Kornman Parties could have provided an affidavit from Kornman stating that he was unable to meaningfully respond to Canada's factual allegations until Jenkins identified the acts and/or statements at issue in the Plaintiffs' fraud/fraudulent inducement claims (as appears to be required by F.R.C.P. 56(f)), that "fact" is intuitively obvious from an understanding of the absence of specific factual allegations attributed to Canada in the Second Amended Complaint. Instead, the Second Amended Complaint contains factual allegations regarding representations made to Jenkins and Meralex by multiple individuals collectively. *See, e.g.*, Second Amended Complaint, ¶ 18 ("Kornman and Canada told Jenkins that the Tax Shelter Scheme would allow Meralex to avoid paying capital gains tax on future sales"), ¶ 19 ("According to Kornman and Canada, the obligation to return the borrowed U.S. Treasury Securities would not be considered for tax purposes in calculating Meralex's outside basis . . ."), ¶ 26 ("Kornman and Canada stated that 'the short sale

obligation is not a liability in accordance with Section 752'"). The fraud and breach of fiduciary claims alleged in the Second Amended Complaint, as stated against Heritage, allege that Heritage made false representations and breached its fiduciary duties "through its agents GMK, Kornman and Canada." Second Amended Complaint, ¶¶ 74, 87.

As the Second Amended Complaint fails to attribute specific statements to Canada, Kornman cannot be expected to defend against Canada's assertion that everything Canada is alleged to have said, Kornman told him to say or acquiesced in Canada saying it.[6] And, while counsel for the Kornman Parties could have provided an affidavit stating that the Jenkins deposition has not been concluded and that Jenkins has not testified about any specific fraudulent acts or statements attributable to Canada, those "facts" do not appear to be disputed by Canada or his counsel. *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir. 1986) (failure to comply with Rule 56(f) procedure does not preclude consideration of a motion for continuance of a summary judgment hearing to

---

[6] In addition, the Court questions the sufficiency of Canada's affidavit to support the Motion. Rule 56(e) requires that affidavits in support of a motion for summary judgment be made on the personal knowledge of the affiant. Fed. R. Civ. Pro. 56(e). *See also DIRECTV Inc., v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005) (noting that Rule 56(e) requires that summary judgment affidavits be made on the personal knowledge of the affiant and that the affiant must be competent to testify). Canada's affidavit asserts that Kornman "knew about all of Canada's actions and/or statements." However, Canada's affidavit fails to address how Canada has personal knowledge of Kornman's awareness of all of Canada's actions and statements. "Personal knowledge of facts asserted in an affidavit is not presumed from a mere positive averment of facts but rather the court should be shown how the [affiant] knew or could have known such facts and if there is no evidence from which an inference of personal knowledge can be drawn, then it is presumed that such does not exist." *Bova v. Vinciguerra*, 139 A.D. 2d 797, 798 (N.Y. App. Div. 1988). Thus, Canada's affidavit may not comply with Rule 56(e)'s personal knowledge requirement. Moreover, because Canada's affidavit may contain facts outside of his personal knowledge, the affidavit may not be competent evidence under Rule 56(e). Finally, the Court notes that Canada's affidavit, when taken as a whole, is conclusory and self-serving. Such conclusory statements do not resolve all issues of material fact and thus may be insufficient to support a motion for summary judgment. *See Young v. Equifax Credit Info. Servs. Inc.*, 294 F.3d 631, 639 (5th Cir. 2002); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1246 (5th Cir. 1985).

permit discovery).[7]

After considering the procedural posture of the Jenkins/Meralex Adversary, this Court concludes that until the Plaintiffs have provided the Kornman Parties with the specific acts and/or statements alleged to give rise to their fraud/fraudulent inducement claim in the underlying action, it is fundamentally unfair and thus "inappropriate" to require the Kornman Parties to respond to Canada's factual allegations in the third-party action that all of Canada's acts and statements were either acquiesced in or directed by Kornman. Rule 56(e) of the Federal Rules of Civil Procedure gives this Court discretion to refuse to enter a summary judgment even if the adverse party does not respond by filing affidavits or other summary judgment evidence in opposition to the motion. *See* F.R.C.P. 56(e) ("If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party.")(emphasis added).

Accordingly, the Motion is continued to a date at least thirty (30) days after the conclusion of the Jenkins' deposition. Counsel for Canada is directed to (i) obtain an appropriate hearing date from the courtroom deputy once the Jenkins' deposition is concluded, and (ii) give notice of the hearing to counsel for the Kornman Parties. The Kornman Parties must submit any summary judgment evidence upon which they will rely in opposing the Motion at least ten (10) days prior to the continued hearing. Thereafter, if Canada chooses to supplement his summary judgment evidence, he may file such a supplement with the Court so as to be received no later than two (2)

---

[7]The Fifth Circuit stated in *Fontenot* that while a party's failure to file an affidavit under Rule 56(f) does not preclude consideration of a motion for continuance, "some equivalent statement, preferably in writing or at least at the hearing of the motion, is expected." *Fontenot*, at 1194. Here, the Kornman Parties argue in their written response to the Motion that "the Court has not heard the evidence from Jenkins about Canada's role in selling and implementing the Jenkins tax strategy." *GMK Family Holdings, LLC's and Gary M. Kornman's Br. In Supp. of their Resp. To Third Party Def. W. Ralph Canada, Jr.'s Mot. For Partial Summ. J.*, p. 11.

**Memorandum Opinion and Order** **Page 12**

business days prior to the continued hearing.

**SO ORDERED.**

**### End of Memorandum Opinion and Order ###**