


**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed November 15, 2007**                          **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE HERITAGE | § | CASE NO. 04-35574-BJH-11 |
| ORGANIZATION, L.L.C. | § | |
| | § | |
| Debtor. | § | |
| _____ | § | _____ |
| MERALEX, L.P. and HOWARD | § | |
| M. JENKINS, | § | |
| | § | |
| Plaintiffs, | § | |
| - against - | § | |
| | § | |
| THE HERITAGE ORGANIZATION, | § | |
| L.L.C., GMK FAMILY HOLDINGS, | § | |
| L.L.C., GARY M. KORNMAN, EDWARD | § | |
| D. AHRENS, and AHRENS & | § | ADVERSARY NO. 05-3699-BJH |
| DeANGELI P.L.L.C., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| _____ | § | _____ |

| | |
|---|---|
| **GMK FAMILY HOLDINGS, L.L.C.,** | § |
| **GARY M. KORNMAN, and THE** | § |
| **HERITAGE ORGANIZATION, L.L.C.,** | § |
| | § |
| Third Party Plaintiffs, | § |
| | § |
| - against - | § |
| | § |
| **W. RALPH CANADA, JR.,** | § |
| | § |
| Third Party Defendant. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to compel filed by Meralex, L.P. and Howard M. Jenkins (the "Plaintiffs") in this adversary proceeding (the "Motion"). There is no dispute that the Court has jurisdiction over the adversary proceeding and, accordingly, the Motion. *See* Docket Nos. 60 through 63. This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law regarding the Motion.

### I.    Factual and Procedural Background

The relationship between the Plaintiffs and The Heritage Organization LLC ("Heritage") and the facts giving rise to this adversary proceeding are the subject of a lengthy Memorandum Opinion and Order entered by the Court on August 31, 2007 (the "Prior Memorandum Opinion and Order") in which the Court approved, *inter alia*, the settlement reached by Chapter 11 trustee for Heritage (the "Trustee") with the Plaintiffs regarding their claims against Heritage. For ease, the Court adopts that background discussion here. *See* Prior Memorandum Opinion and Order, Docket No. 1266 in Case No. 04-35574-BJH-11, pp. 9-14; 59-66. Subsequent to the entry of the Prior Memorandum Opinion and Order, the Plaintiffs settled their claims against another defendant in this adversary

proceeding, Ahrens & DeAngeli, p.l.l.c., a Boise, Idaho law firm ("A&D"). The only claims remaining in the adversary proceeding are the Plaintiffs' claims against defendants Gary M. Kornman ("Kornman") and GMK Family Holdings, L.L.C. ("GMK"), and third-party claims by Korman and GMK against W. Ralph Canada, Jr.

By the Motion, the Plaintiffs seek to compel the production of two categories of documents withheld by the Trustee (who is now the trustee of the creditors' trust created pursuant to the confirmed Chapter 11 plan of liquidation for Heritage). The two categories of documents are: (1) communications between A&D and Heritage, and (2) invoices sent to Heritage by A&D between January 8, 1998 and May 5, 2004. The Trustee has withheld these documents on privilege grounds – *i.e.*, by claiming that they are shielded from production by the attorney-client privilege. In short, the Trustee asserts that these documents relate to A&D's provision of legal services to Heritage in relation to various tax and estate planning issues, independent of any services which A&D provided in relation to the development and sale of tax strategies to Heritage clients or services provided in connection with the implementation of those strategies by Heritage clients. *See* Trustee's Resp. to Plaintiffs' Mot. to Compel Production of Documents on Trustee's Privilege Log (Docket No. 105), ¶ 6.

Although the Plaintiffs do not dispute the Trustee's right to assert the privilege on behalf of Heritage, the Plaintiffs contend that the Trustee failed to prove the existence of an attorney-client relationship between A&D and Heritage during the time periods covered by the withheld documents. Alternatively, the Plaintiffs contend that if an attorney-client relationship was established by the Trustee, the crime-fraud exception to the attorney-client privilege applies, such that the documents must be produced.

**Memorandum Opinion and Order**  3

For the reasons explained more fully below, the Court agrees with the Plaintiffs and orders the production of the withheld documents identified on the Trustee's privilege log.

## II. Legal Analysis

### A. Legal Standard

Application of the attorney-client privilege is a question of fact and the Trustee bears the burden of establishing that an attorney-client relationship existed between A&D and Heritage during the relevant time period. *In re Sante Fe Intern. Corp.*, 272 F.3d 705 (5th Cir. 2001); *United States v. Kelly* 569 F.2d 928 (5th Cir. 1978); *Huie v. DeShazo*, 922 S.W.2d 920, 926 (Tex. 1996); *In re Seigel*, 198 S.W.3d 21, 28 (Tex. App. – El Paso 2006 ). Once the Trustee establishes the existence of an attorney-client relationship between A&D and Heritage during the relevant time periods (such that the documents may be shielded from production by the attorney-client privilege), the documents will still not be privileged unless they would disclose "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Tex. Rule of Evid. 503(b)(1). *See Boring & Tunneling Co. v. Salazar*, 782 S.W.2d 284, 289 (Tex. App. – Houston [1st Dist.] 1989) (stating that to be protected, "it must appear that the communication was made by a client seeking legal advice from a lawyer in his capacity as such, the communication must relate to the purpose for which the advice is sought, and the proof, expressly or by circumstances, must indicate a desire in the client for confidence and secrecy").[1]

---

[1] The Fifth Circuit has held that the attorney-client privilege applies only if: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *United States v. Kelly* 569 F.2d 928 (5th Cir. 1978).

**Memorandum Opinion and Order** 4

Once the Trustee has satisfied his burdens and has demonstrated that the withheld documents are shielded from production by the attorney-client privilege, the Plaintiffs must establish the existence of the crime-fraud exception to that privilege. *Coats v. Ruiz*, 198 S.W.3d 863 (Tex. App. – Dallas 2006); *In re AEP Texas Central Co.*, 128 S.W.3d 687 (Tex. App. – San Antonio 2003). To establish the exception, the Plaintiffs must make a prima facie case that the attorney-client relationship between A&D and Heritage was used to promote a crime or fraud. *Coats v. Ruiz*, 198 S.W.3d 863 (Tex. App. – Dallas 2006). A prima facie case is met when the Plaintiffs produce evidence "that will establish a fact or sustain a judgment unless contradictory evidence is produced." Black's Law Dictionary, p. 598 (8th ed. 2004).

### B. Are the Documents Shielded from Production by the Attorney-Client Privilege?

The only evidence the Trustee relied upon at the hearing on the Motion to support his claim of attorney-client privilege were the invoices Heritage received from A&D, which were provided to the Court for an *in camera* inspection at the conclusion of the hearing.[2] From these eighty-nine (89) invoices (the "Invoices"), the Trustee argues that Heritage must have been A&D's client because it was invoiced by A&D. When asked if there was any other evidence to support the Trustee's claim of attorney-client privilege, counsel for the Trustee advised the Court that Heritage's former principals, who continued to urge the Trustee to assert the attorney-client privilege with respect to the withheld documents, were aware of the hearing on the Motion and the Trustee's need to prove the existence of an attorney-client relationship between A&D and Heritage, but that no one who could testify regarding the existence of that relationship had chosen to attend the hearing on the

---

[2]Although not offered into evidence at the hearing on the Motion, attached as Exhibit B to the Motion is a deposition excerpt from Ed Ahrens ("Ahrens"), a principal of A&D, in which Ahrens testified that A&D did research for Heritage from time to time under a general retainer.

**Memorandum Opinion and Order** 5

Motion. So, at the conclusion of the hearing, the Trustee simply asked the Court to review the Invoices in hopes that they would suffice to demonstrate the existence of an attorney-client relationship between A&D and Heritage and the existence of the privilege.

The Court has done so. It is true that the Invoices are from A&D and that they are addressed to Heritage (or its predecessor entity). Some of those invoices even provide some billing detail, *see, e.g.*, Tab 19 (an invoice dated February 5, 1998), Tab 75 (an invoice dated December 5, 2001); while others simply state a flat amount "for professional services rendered." *See, e.g.*, Tab 18 (an invoice dated January 8, 1998), Tab 21 (an invoice dated February 5, 1998). However, even when the invoice provides some level of billing detail, it is very difficult to understand what A&D was working on without further explanation. For example, a February 5, 1998 invoice states that Ahrens did "[w]ork on CGA-CRAT; preparation of powerpoint illustrations; research re: borrowing by CRAT.CGA." *See* Tab 19 (entry for EDA on 12/19/97). While the Court understands what preparing powerpoint illustrations means, the Court has no idea what work the other billing entries describe.

Moreover, even assuming the Invoices are some evidence of the existence of an attorney-client relationship, some of those invoices are more consistent with the existence of an attorney-client relationship between A&D and Kornman, the former principal of Heritage, instead of an attorney-client relationship between A&D and Heritage. For example, an invoice dated February 5, 1998, provides numerous entries about "G. KORNMAN SUPPORTING ORGANIZATION," "compose list of information needed G. KORNMAN SUPPORTING ORGANIZATION," [n]ote and fax to Gary re: information for supporting organization formation; develop list of appropriate community foundations." *See* Tab 20, p. 1. The Court has no idea what "G. KORNMAN SUPPORTING

ORGANIZATION" is, or why Heritage would be interested in it. Similarly, an invoice dated March 11, 1998, refers to "telephone conference with Gary re: formation of two medical related entities" and "[t]elephone conference with Ed Ahrens re: Kornman charity." *See* Tab 23, p. 1. Again, without more, the Court is unable to determine what work was being done and for whom.

The Court's questions about the Invoices and the work reflected in them change from invoice to invoice. It is not necessary for the Court to burden this Memorandum Opinion and Order with each of those questions and/or concerns. It was the Trustee's burden to prove the existence of an attorney-client relationship between A&D and Heritage during the relevant time periods, and the Court concludes that the Trustee failed to carry that burden for the reasons explained more fully below.

First, the simple fact that Heritage received the Invoices from A&D, standing alone, does not prove the existence of an attorney-client relationship between A&D and Heritage by a preponderance of the evidence, which was the Trustee's burden. Without other evidence supporting the existence of an attorney-client relationship during the relevant time periods – *i.e.*, testimony from Kornman and/or Ralph Canada ("Canada"), another former Heritage principal, attesting to the existence of that relationship, it is equally possible that Heritage received invoices from A&D (and perhaps even paid them, although no evidence was offered by the Trustee regarding payment) without Heritage being the law firm's client – *i.e.*, that Kornman was the A&D client and he caused the corporation he controlled, Heritage, to pay those invoices on his behalf. This alternative is certainly supported by the content of certain of the Invoices. *See, e.g.*, Tab 20, Tab 23.

Moreover, even assuming that some of the Invoices suggest the existence of an attorney-client relationship between A&D and Heritage, those documents are only privileged if they tend to

**Memorandum Opinion and Order** 7

reveal confidential communications from the client (Heritage) to the attorney (A&D), made for the purpose of facilitating the rendition of professional legal services to Heritage. Tex. Rule of Evid. 503(b)(1); *see Boring & Tunneling Co. v. Salazar*, 782 S.W.2d 284, 289 (Tex. App. – Houston [1st Dist.] 1989) (stating that to be protected, "it must appear that the communication was made by a client seeking legal advice from a lawyer in his capacity as such, the communication must relate to the purpose for which the advice is sought, and the proof, expressly or by circumstances, must indicate a desire in the client for confidence and secrecy"). While some of the Invoices contain some level of billing detail regarding A&D's work, the Court is unable to determine what confidential communications from Heritage to A&D are allegedly revealed by the production of those documents. It is not the Court's burden to try to ferret out what possible confidential communications from client to attorney may be revealed by the production of the Invoices; rather, the Trustee was required to (i) establish the existence of the attorney-client relationship, and (ii) then explain how the production of the Invoices would disclose confidential client communications to that attorney. *In re BP Products North America, Inc.*, No. 01-06-00679-CV, 2006 WL 2973037 (Tex. App. – Houston [1st Dist.] Oct. 16, 2006). The Trustee has simply failed to do so as it relates to the Invoices.[3]

Turning next to the documents listed on the Trustee's privilege log that are not invoices, those documents are either (i) faxes to Heritage or one of its principals from A&D, (ii) memoranda or draft memoranda to Heritage or one of its principals from A&D, or (iii) written transcripts of telephone calls between A&D and one of Heritage's principals (collectively, the "Non-Invoice Documents").

---

[3] This is not the first time that the Trustee has been placed at a disadvantage by the recalcitrance of the former Heritage principals to participate in evidentiary hearings before the Court. The Court understands the limitations placed upon the Trustee by virtue of his position – *i.e.*, that he has no personal knowledge of any of these matters.

**Memorandum Opinion and Order** 8

However, for the reasons explained more fully below, the Court is not convinced that the Non-Invoice Documents are protected by the attorney-client privilege either.

Heritage's relationship(s) with A&D was complicated. As explained in the Prior Memorandum Opinion and Order, substantial evidence was offered regarding the relationship(s) between Heritage and A&D in connection with the hearings on the Trustee's motion to settle with the client claimants in the underlying bankruptcy case. From that evidence it appears undisputed that A&D actually developed the capital gains tax savings strategy that Heritage "sold" to many of its clients, for which A&D was paid a fee by Heritage. *See* Prior Memorandum Opinion and Order, Docket No. 1266 in 04-35574-BJH-11, p. 7 n. 15. It also appears that Heritage and A&D co-promoted the tax savings strategies Heritage sold to its clients. In other words, while A&D was serving as "independent counsel" to the Heritage client in some cases, and was providing those shared clients with legal opinions as to the efficacy and legality of the Heritage tax savings strategies, A&D was receiving undisclosed payments from Heritage that were calculated based upon the fee Heritage received from the client. *Id*. at pp. 61-62. Even when another law firm may have served as "independent counsel" to the Heritage client and provided the required legal opinion, it appears that A&D received a portion of the fee Heritage received from the client. It appears that these monies were paid to A&D as a result of some sort of a "commission" or "override" agreement between Heritage and A&D.

There is no evidence in this record to suggest that the Non-Invoice Documents were provided to Heritage as part of an attorney-client relationship. It is at least equally likely that the Non-Invoice Documents were provided to Heritage as a part of the co-promoter relationship between Heritage and A&D. Because it was the Trustee's burden to prove by a preponderance of the evidence that the

**Memorandum Opinion and Order**                                                                                                 **9**

Non-Invoice Documents were generated during an attorney-client relationship between A&D and Heritage, on this record the Court concludes that the Trustee has failed in his proof.

Moreover, as noted previously, even if the attorney-client relationship had been established, before the Non-Invoice Documents would be privileged, confidential communications from the client to the attorney would have to be revealed to protect the documents from production. Again, without more explanation than is apparent from the face of the documents, the Court is unable to determine what confidential client communications would be revealed by the production of the Non-Invoice Documents. For example, Tab 2 is a copy of a tax court decision faxed to Canada by an A&D attorney. No note accompanies the case – just a fax cover page. What possible confidential client communication can be at risk by the production of this document? Similarly, Tab 1 is a copy of a tax court decision faxed to Kornman by Ahrens. While the fax cover page contains a hand-written note from Ahrens to Kornman, a fair reading of the accompanying note does not reveal any confidential communication from Kornman (no less Heritage) to Ahrens. And, while Tab 5 is a memorandum to Kornman and Canada from A&D dated February 16, 2000, and it bears the legend "Confidential Attorney-Client Communication," it does not appear to disclose confidential communications from Heritage to A&D. Rather, it appears to discuss the circumstances under which A&D would be willing to undertake future representation of future Heritage clients – *i.e.*, as those clients' "independent tax counsel" opining on the legality of the Heritage strategy being "sold" to the client. In short, this memorandum from A&D to Heritage's principals appears to be in furtherance of the co-promoter relationship, not as the result of an attorney-client relationship between A&D and Heritage. Moreover, if anything, it appears that the memorandum might be subject to a claim of work-product privilege, not attorney-client privilege (as it does not appear to

disclose any confidential communication from Heritage to A&D).

Again, the Court does not find it necessary to discuss the Non-Invoice Documents one-by-one. The Court has reviewed each of them. And, from that review, the Court concludes that on this record the Trustee has simply failed to prove that the Non-Invoice Documents are shielded from production by the attorney-client privilege.[4]

**III. Conclusion**

Because the Trustee has failed to prove (i) the existence of an attorney-client relationship between A&D and Heritage by a preponderance of the evidence, and/or (ii) that confidential client communications from Heritage to A&D would be revealed by the production of the documents listed on the Trustee's privilege log, the Court will order the production of all of those documents.

Accordingly, the Motion is granted.

**SO ORDERED**.

**### End of Memorandum Opinion and Order ###**

---

[4] Because the Trustee failed to prove that the Invoices or the Non-Invoice Documents are protected by the attorney-client privilege, it is not necessary to address the Plaintiffs' arguments that the crime-fraud exception applies.

**Memorandum Opinion and Order** 11